UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARTHA MOSQUEDA,

                     Plaintiff,                                Case No. 1:21-cv-10245

v.                                                 Honorable Thomas L. Ludington
                                                 United States District Judge

FAMILY DOLLAR STORES OF MICHIGAN,
LLC,

                     Defendant.

_____/

**OPINION AND ORDER GRANTING AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION
TO EXCLUDE PLAINTIFF'S EXPERT**

Defendant Family Dollar has filed a motion for summary judgment, ECF No. 15, and a

motion to exclude Plaintiff Martha Mosqueda's expert witness, ECF No. 12. As explained

hereafter, Defendant's Motion for Summary Judgment will be granted and denied in part, and

Defendant's Motion to Exclude will be granted.

**I.**

On March 3, 2019, Plaintiff Martha Mosqueda, a disabled person, visited the Family Dollar

on Genesee Avenue in Saginaw, Michigan. She parked in a disabled-parking space with no

disabled-parking sign, exited her vehicle, and walked around the front of her car to enter the store.

A remnant of the disabled-parking sign caught her foot and tripped her. Among other injuries, she

scraped her knee and sprained her pinky finger.

In November 2020, she filed a complaint in the Tenth Circuit Court for the County of

Saginaw. ECF No. 1 at PageID.8–11. Amended in January 2021, the three-count complaint alleges

that Defendant Family Dollar is liable under common-law premises liability, the Americans with

Disabilities Act (ADA), 42 U.S.C. § 1201 *et seq.*, and Michigan's Persons with Disabilities Civil Rights Act (MPDCRA), MICH. COMP. LAWS § 37.1101 *et seq.* ECF No. 1 at PageID.15–21. That liability, she contends, hinges on Defendant "leaving a 1–2[ inch] stump projecting above a sidewalk surface and creating a trip hazard in the path of travel to the entrance door," which tripped her and caused her injuries. *See* ECF No. 1 at PageID.15–21. Eleven days later, Defendant removed the case to federal court. *See id.* at PageID.1–3.

On August 17, 2021, Plaintiff's expert, professional inspector Jeffrey E. Bartrem, visited the Family Dollar to assess the alleged violations and create an expert report. ECF No. 12-11 at PageID.154. Three months later, Defendant filed a motion to exclude Mr. Bartrem from testifying, ECF No. 12, which has been fully briefed, ECF Nos. 14; 19. Three weeks later, Defendant also filed a motion for summary judgment on all three counts, ECF No. 15, which has been fully briefed, ECF Nos. 23; 24. The Motion for Summary Judgment will be addressed in Part II, and the Motion to Exclude will be address in Part III.

## II.

Defendant has filed a motion for summary on all three counts. ECF No. 15.

### A.

A motion for summary judgment should be granted if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant has the initial burden of "identifying those portions of [the record that] it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant, who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). The nonmovant must show more than "some metaphysical doubt as

to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Indeed, the "mere existence of a scintilla of evidence" in support of the nonmovant does not establish a genuine issue of material fact. *Liberty Lobby*, 477 U.S. at 252.

The court must review the evidence and draw all reasonable inferences in favor of the nonmovant to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52; *see Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 428 (6th Cir. 2018).

Summary judgment will be granted if the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. But summary judgment will be denied "[i]f there are . . . 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted).

**B.**

Defendant contends that Plaintiff's premises-liability claim fails because the object over which Plaintiff tripped was "open and obvious," and because Plaintiff cannot prove that Defendant had notice of the object. ECF No. 15 at PageID.288, 299–314.

"Landowners owe the greatest duty of care to invitees as a class." *Bragan ex rel. Bragan v. Symanzik*, 687 N.W.2d 881, 889 (Mich. Ct. App. 2004). Generally, the landowner's duty is to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land. *Bertrand v. Alan Ford, Inc.*, 537 N.W.2d 185, 186 (Mich. 1995). But that duty generally does not include protection from "open and obvious" dangers. *Lugo v. Ameritech Corp.*, 629 N.W.2d 384, 386 (Mich. 2001). However, if there are "special aspects" of a

condition that make an "open and obvious" danger "unreasonably dangerous," the premises possessor must take reasonable precautions to protect invitees from such danger. *Id.* at 386–87. To determine whether a condition is "open and obvious," or whether there are "special aspects" that render an "open and obvious" condition "unreasonably dangerous," the factfinder must apply the objective "reasonably prudent person" standard. *Id.* To that end, the factfinder must consider the "condition of the premises," not the plaintiff's "subjective degree of care." *Id.* at 518 n.2, 524. In this way, a disabled person is held to the same standard of reasonable conduct as a nondisabled person. *See Mann v. Shusteric Enters.*, 683 N.W.2d 573, 577 (Mich. 2004).

## 1.

Defendant first asserts that it had no legal duty to Plaintiff because the remnant of the post was open and obvious to a reasonable person. ECF No. 15 at PageID.303–05. According to Defendant, a reasonably prudent person would have discovered the remnant upon casual inspection. *Id.* at PageID.305–11.

"[W]here the dangers are known to the invitee or are so obvious that the invitee might reasonably be expected to discover them, an invitor owes no duty to protect or warn the invitee unless he should anticipate the harm despite knowledge of it on behalf of the invitee." *Riddle v. McLouth Steel Prods. Corp.*, 485 N.W.2d 676, 681 (Mich. 1992). To determine if a danger is open and obvious, the relevant inquiry is whether "an average user with ordinary intelligence [would] have been able to discover the danger and the risk presented upon casual inspection." *Novotney v. Burger King Corp.*, 499 N.W.2d 379, 381 (Mich. Ct. App. 1993). If reasonable minds could differ as to whether a risk is open and obvious, "the obviousness of risk must be determined by the jury." *Glittenberg v. Doughboy Recreational Indus.*, 491 N.W.2d 208, 217 (Mich. 1992); *Vella v. Hyatt Corp.*, 166 F. Supp. 2d 1193, 1198 (E.D. Mich. 2001).

The factual predicate for Defendant's argument that the remnant was open and obvious is that Plaintiff saw it after she fell. ECF No. 15 at PageID.305. Plaintiff responds that the common-law doctrine for an open-and-obvious danger is overridden by the ADA, because a violation of the ADA can establish negligence *per se*. *See* ECF No. 23 at PageID.526–29 (citing *Smith v. Wal-Mart Stores, Inc.*, 167 F.3d 286 (6th Cir. 1999). Defendant replies that a statutory duty does not override the open-and-obvious requirement. *See* ECF No. 24 at PageID.708–10.

There is a genuine question of fact as to whether the remnant was open and obvious to a reasonable person. *See* ECF No. 15-5 at PageID.358. Plaintiff testified that, after she fell, she noticed the shadow of her car was concealing the remnant, which she thought might be why she did not see it. Two photographs showing a car shadow cast over the remnant corroborate Plaintiff's testimony. *See* ECF No. 15-7 at PageID.369, 370. Moreover, a third photograph demonstrates that the remnant is barely a shoe sole high and shares a substantially similar grey-colored hue with the concrete sidewalk below it. *See id.* at PageID.371. And the remnant resembles but is smaller than a caltrop,[1] which is an almost imperceivable weapon that police often use to pop the tires of fleeing drivers. *See id.* Drawing all reasonable inferences in Plaintiff's favor based on these facts, there is a genuine question as to whether the remnant was open and obvious to a reasonably prudent person.

**2.**

Defendant also asserts that, even if the remnant was an open-and-obvious danger, it was not *unreasonably* dangerous. *See* ECF No. 15 at PageID.300–03. Defendant adds that there were no special aspects about the remnant's risk. *See id.* at PageID.311–13. Defendant principally likens

---

[1] A caltrop is "a four-spiked device fashioned from iron (originally fashioned from bone), so that when thrown on the ground, one spike always points upward." Arthur Rizer, *Lessons from Iraq and Afghanistan: Is It Time for the United States to Sign the Ottawa Treaty and End the Use of Landmines?*, 49 WILLAMETTE L. REV. 35, 37–38 (2012). Some colloquially refer to caltrops as tire-flattening spikes, tire spikes, or stop spikes.

the remnant to a garden hose, which the Michigan Court of Appeals found was neither unavoidable nor created a high likelihood of injury. *See id.* at PageID.301–02 (citing *Dover v. Westchester Ltd. Dividend Hous. Ass'n*, No. 258654, 2006 WL 1083916, at *4 (Mich. Ct. App. Apr. 25, 2006) (unpublished) (per curiam)). Defendant also likens the remnant to a pothole. *See id.* at PageID.301 (citing *Lugo*, 629 N.W.2d at 388).

"[I]f special aspects of a condition make even an open and obvious risk unreasonably dangerous, the premises possessor has a duty to undertake reasonable precautions to protect invitees from that risk." *Lugo v. Ameritech Corp.*, 629 N.W.2d 384, 386 (Mich. 2001) (emphasis added). An "unreasonably dangerous" condition is one that creates "a risk of death or severe injury." *Joyce v. Rubin*, 642 N.W.2d 360, 366 (Mich. Ct. App. 2002). One of the two key examples of an unreasonably dangerous condition in *Lugo* was standing water at the only exit of a commercial building resulting in the condition being unavoidable because no alternative route was available. *Lugo*, 29 N.W.2d at 387. This rule is a limitation upon the open-and-obvious defense. *Wasaya v. United Artist Theatre Cir., Inc.*, 205 F. Supp. 2d 756, 761 (E.D. Mich. 2002).

As explained earlier, the remnant is akin to a caltrop. *See* discussion *supra* Section II.B.1. Notably, the Fifth Circuit has ruled that caltrops satisfy the Sentencing Guidelines' definition of "dangerous weapon" because placing a caltrop on the ground "could easily lead to death or serious injury." *See United States v. Olarte-Rojas*, 820 F.3d 798, 803 (5th Cir. 2016). Common sense suggests that a barely visible spiked object protruding from the ground could easily lead to serious bodily injury, as anyone who has stepped on a nail would confirm. Further, this remnant with twisted metal edges was protruding from the ground within inches of the Family Dollar's front entryway, the only customer entrance. *See* ECF No. 15-7 at PageID.369–74. Being in front of the entrance, customers would undoubtedly cross over the remnant with a shopping cart blocking the

immediate view of the ground. With the remnant nearly unavoidable and cemented to the ground—unlike a caltrop, nail, or garden hose—anyone wearing flip-flops, sandals, or other open-toed shoes, as many do when going to a store, risked gashing their foot open. Even worse, the remnant blended into the ground around it.

Drawing all reasonable inferences in Plaintiff's favor based on these facts, there is a genuine question as to whether the remnant was unreasonably dangerous. But "the question of what constitutes an unreasonably dangerous condition is a question of law." *Bullard v. Oakwood Annapolis Hosp.*, 864 N.W.2d 591, 596 (Mich. Ct. App. 2014), *overruled on other grounds by Est. of Livings v. Sage's Inv. Grp., LLC*, 968 N.W.2d 397 (Mich. 2021). Based on the facts stated above, the nearly unavoidable jagged-edge protrusion was an unreasonably dangerous condition.

### 3.

Defendant further asserts that "Plaintiff cannot prove that [Defendant] had actual or constructive notice of the steel protruding from the walk." *See* ECF No. 15 at PageID.313–14.

In Michigan, a storekeeper "is liable for injury resulting from an unsafe condition . . . known to the storekeeper or is of such a character or has existed a sufficient length of time that he should have had knowledge of it." *Serinto v. Borman Food Stores*, 158 N.W.2d 485, 486 (Mich. 1968) (en banc). Thus, Defendant's Motion for Summary Judgment will be denied as to Plaintiff's premises-liability claim if there is a genuine question of fact regarding whether Defendant knew or should have known of the remnant.

Drawing all reasonable inferences in Plaintiff's favor, there is a genuine question as to whether Defendant had actual or constructive notice. Three of Defendant's photographs show the nearly 60-inch removed sign lying on the ground before Defendant's front entrance 967 days after the incident. *See* ECF No. 15-7 at PageID.370, 372, 373. Further, Defendant's manager, Janise

Burns, could not recall how long the sign had been broken before Plaintiff tripped on it. *See* ECF No. 15 at PageID.314. Indeed, Ms. Burns testified that she realized the sign was broken "at some point" but could not "recall" or "remember" when. ECF No. 15-10 at PageID.471. And she could not remember whether she contacted corporate about it, which she stated was her "normal practice." *Id.* Yet Defendant acknowledged that the sign at issue "broke at some point before [Plaintiff] fell." ECF No. 15 at PageID.315. And Plaintiff's expert testified, and photographs confirm, that the remnant has a "jagged edge." ECF No. 12-11 at PageID.157. Moreover, Defendant has working security cameras that record the exact location of the sign and its remnant, and Defendant has a video recording of Plaintiff's injury. *See id.* A reasonable juror could infer that the sign was laying in front of the store since it was removed, possibly creating notice. The same is true based on the jagged nature of the remnant, suggesting it was not cleanly removed and was partially attached until someone completely severed it.

For those reasons, Defendant's Motion for Summary Judgment will be denied as to Plaintiff's premises-liability claim.

## C.

Defendant contends that there is no genuine issue of material fact that it did not violate the ADA or the MPDCRA. ECF No. 15 at PageID.288, 315–19. Specifically, Defendant claims that it is exempt from ADA liability because it erected the sign—even though it "broke at some point before [Plaintiff] fell." ECF No. 15 at PageID.315.

Defendant adds that the provision of the ADA under which Plaintiff brought this suit provides for only injunctive relief, and that any ADA claim is moot because the sign has since been repaired. *See* ECF No. 15 at PageID.316–17. Defendant concludes that Plaintiff's MPDCRA claim should fail for the same reasons. *See* ECF No. 15 at PageID.318.

Plaintiff's ADA claims are moot. ADA claims are moot when a defendant has presented evidence that it remediated the ADA violations identified in the complaint. *See Dowling v. MacMarin, Inc.*, 156 F.3d 1236, 1236 & n.1 (9th Cir. 1998) (holding that being "fully in compliance with the ADA" due to "recent renovations" renders an ADA claim moot); *Kennedy v. Omegagas & Oil, LLC*, 748 F. App'x 886, 891 (11th Cir. 2018) (unpublished) (per curiam) (holding that a defendant's remediation of an ADA violation renders the plaintiff's "complaint as to th[e] noncomplaint features moot"); *Boitnott v. Border Foods, Inc.*, 361 F. Supp. 3d 858, 858 (D. Minn. 2019) (citing ADA § 302, 42 U.S.C.A. § 12182(a)); *Bacon v. Walgreen Co.*, 91 F. Supp. 3d 446, 451–53 (E.D.N.Y. 2015); *Sharp v. Rosa Mexicano, D.C., LLC*, 496 F. Supp. 2d 93, 97–99 (D.D.C. 2007). Defendant remediated the ADA violation at issue. *See* ECF No. 15-7 at PageID.374. "[B]ecause neither party has a legally cognizable interest in the final determination of the underlying questions of fact and law," Plaintiff's ADA claim is moot. *See L.A. Cnty. v. Davis*, 440 U.S. 625, 625 (1979).

"The [MPDCRA] substantially mirrors the ADA, and resolution of a plaintiff's ADA claim will generally, though not always, resolve the plaintiff's [MPDCRA] claim." *Donald v Sybra, Inc.*, 667 F.3d 757, 764 (6th Cir. 2012). Plaintiff does not argue that the claims should be analyzed separately, so "this Court will apply ADA jurisprudence to both claims." *Peoples v. FCA US, LLC*, No. 15-14003, 2017 WL 2264786, at *5 (E.D. Mich. May 24, 2017). As indicated, Plaintiff's MPDRCA claim is also moot.

Consequently, Defendant's Motion for Summary Judgment will be granted as to Plaintiff's ADA and MPDCRA claims, and as explained earlier the Motion will be denied as to Plaintiff's premises-liability claim.

## III.

Relying on the seminal *Daubert v. Merrell Down Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), Defendant seeks to exclude the testimony of Plaintiff's expert, Jeffrey E. Bartrem, claiming that his expert testimony employs no methodology and is within the ken of an average juror. *See* ECF No. 12 at PageID.54–56.

## A.

Federal Rule of Evidence 702 governs the admissibility of expert testimony, providing that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>> (b) the testimony is based on sufficient facts or data;
>> (c) the testimony is the product of reliable principles and methods; and
>> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.

Rule 702 assigns the district court "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand"—a kind of "gatekeeping role." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). In this role, district courts consider several factors that the *Daubert* Court identified, including whether the expert's methods are testable and subject to peer review. *Id.* at 593–94; *see also United States v. Bonds*, 12 F.3d 540, 558 (6th Cir. 1993) (identifying and discussing the so-called "*Daubert* factors").

The *Daubert* factors "do not constitute 'a definitive checklist or test" and do not apply in every case. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). "Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." *Id.* at 142; *see also Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 295 (6th Cir. 2007) ("The gatekeeping inquiry is

context-specific and 'must be tied to the facts of a particular case.'" (quoting *Kumho Tire*, 526 U.S. at 142)).

**B.**

As Plaintiff presents him, Jeffrey Bartrem's expert testimony is two-fold. On the one hand, Bartem intends to testify that Defendant violated various provisions of the ADA and Michigan building codes as relevant to Plaintiff's ADA claim and MPDCRA claim. As explained earlier, those claims are dismissed as moot, so Bartrem's expert testimony in that regard is also moot. Thus, the only other possible relevance of Bartrem's purported expert testimony is "as to the nature and character of this premises defect." ECF No. 14 at PageID.192 (emphasis omitted).

The topic on which the expert will testify must be beyond the ken of an average juror. *See* FED. R. EVID. 702(a); *see also United States v. Rios*, 830 F.3d 403, 413 (6th Cir. 2016) ("A district court may commit manifest error by admitting expert testimony where the evidence impermissibly mirrors the testimony offered by fact witnesses, or the subject matter of the expert's testimony is not beyond the ken of the average juror." (quoting *United States v. Amuso*, 21 F.3d 1251, 1263 (2d Cir. 1994))).

"The prototypical example of [lay-witness testimony] relates to *the appearance of persons or things*, identity, the manner of conduct, competency of a person, degrees of light or darkness, sound, *size*, weight, distance, and an endless number of items that cannot be described factually in words apart from inferences." *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 241 (6th Cir. 2010) (quoting *Asplundh Mfg. Div. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1196 (3d Cir. 1995) (emphases added)); *e.g.*, *United States v. Westbrook*, 896 F.2d 330, 335–36 (8th Cir. 1990) (holding that two lay witnesses who were heavy amphetamine users were properly permitted to

- 11 -

testify that a substance was amphetamine; but it was error to permit another witness to make such an identification because she had no experience with amphetamines).

The Sixth Circuit has previously acknowledged a lay witness's ability to identify objects based upon personal observation. *See, e.g.*, *United States v. Strickler*, 978 F.2d 1260 (6th Cir. 1992) (unpublished table decision) (per curiam) (lay witness may testify that substance was marijuana). Indeed, it has allowed lay testimony on matters much more specialized and technical than whether a protrusion from the ground is open and obvious. *See, e.g.*, *United States v. Madison*, 226 F. App'x 535, 543–44 (6th Cir. 2007) (unpublished) (lay witness may testify, based upon review of financial records, as to whether appropriate funds were available to make a down payment); *Heritage Mut. Ins. v. Reck*, 127 F. App'x 194, 199–200 (6th Cir. 2005) (unpublished) (affirming admission of lay testimony regarding whether an automobile collision was preventable).

Other circuits have recognized that lay witnesses may testify regarding matters open to the senses. *See, e.g.*, *Rushing v. Kansas City S. Ry.*, 185 F.3d 496, 512 (5th Cir. 1999) (reversing district court's exclusion of lay witness testimony regarding the level of perceived sound); *Randolph v. Collectramatic, Inc.*, 590 F.2d 844, 847–48 (10th Cir. 1979) ("There is uniformity among the courts that the testimony of witnesses . . . is admissible if predicated upon concrete facts within their own observation and recollection that is facts perceived from their own senses, as distinguished from their opinions or conclusions drawn from such facts."); *Burchill v. Kearney–Nat'l Corp.*, 468 F.2d 384, 386 (3d Cir. 1972) (reversing district court decision excluding lay witness testimony identifying substance as rust); *Aetna Life Ins. Co. of Hartford v. Kelley*, 70 F.2d 589, 593 (8th Cir. 1934) (holding that a non-expert may testify to matters that are "open to the senses").

- 12 -

Michigan courts have admitted expert testimony regarding the openness and obviousness of an object protruding from a sidewalk and possibly concealed by darkness. *See Sciarrotta-Hamel v. City of Dearborn*, No. 350953, 2021 WL 138702, at \*4–5 (Mich. Ct. App. Jan. 14, 2021).

But neither the openness nor obviousness of this ground protrusion are beyond the ken of an average juror. Here, there is a video recording of the incident, *see* ECF No. 12-11 at PageID.154; in addition to three photographs of the unreasonably dangerous remnant; *see* ECF No. 15-7 at PageID.369–71; six photographs of a car shadow concealing the remnant, *see* ECF Nos. 15-7 at PageID.369–70; 23-9 at PageID.598–600; 23-16 at PageID.629; and two photographs with a cone over the remnant for a point of contrast, *see* ECF No. 15-7 at PageID.372–73. Thus, the jurors should have little to no issue determining whether the remnant was open or obvious, as it is within the realm of their five senses, particularly sight. That is even more true given not only the video and photographs of the remnant, but also the contrasting photographs of a cone covering it.

Because the only relevant testimony Jeffrey Bartrem can offer is lay testimony, and Plaintiff did not offer Jeffrey Bartrem as a lay witness, Defendant's Motion to Exclude will be granted.

## IV.

Accordingly, it is **ORDERED** that Defendant's Motion for Summary Judgment, ECF No. 15, is **GRANTED IN PART** and **DENIED IN PART**. Defendant's Motion is denied as to Plaintiff's premises-liability claim and granted in all other regards.

Further, it is **ORDERED** that Defendant's Motion to Exclude Expert Jeffrey Bartrem, ECF No. 12, is **GRANTED**.

Dated: March 22, 2022                    s/Thomas L. Ludington
                                         THOMAS L. LUDINGTON
                                         United States District Judge